IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

L. SHIRLEY HARVEY,
CHRISTOPHER DORSEY,

        Plaintiffs,

v.                                                      Case No. 3:12-cv-00650-JAG

JANE KIRK SHOWALTER,
GEORGE WILLIAM THOMAS,
CECELIA DABNEY,
ERNESTO SAMPSON, JR.,
DONALD PALMER,
KIMBERLY BOWERS,
CHARLES JUDD,

        Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the plaintiffs' motion for preliminary injunction and the defendants' motions to dismiss. The Court shall deny the plaintiffs' motion because it fails to meet any of the requirements for such relief. Plaintiff Harvey, who describes herself as a "Candidate for Mayor," and plaintiff dorsey,[1] who calls himself a "Voter and Petition Circulator," seek to have the Court appoint "an independent agency to review the documentation submitted for all candidates" for the November 6, 2012 local elections, determine whether the City of Richmond General Registrar, Jane Kirk Showalter, "showed favoritism or prejudice to any candidate," and determine "whether the Richmond Electoral Board and the State Board of

---

[1] Apparently, dorsey prefers to write his first and last names in all lowercase letters, so the Court will follow suit. For reference, *see* http://vimeo.com/48706537.

Elections have properly performed their duties to provide checks and balances and to ensure fairness to all concerned." (Dk. No. 2 at 5.) They also ask "that the upcoming local election be held at a later date in order to accommodate" this investigation.[2] (*Id.*)

The plaintiffs not only fail to establish a likelihood of success on the merits but also do not demonstrate that they have suffered or may suffer *any* actual injury. Furthermore, it is clear that the public would be disserved by this investigation, the benefit of which is questionable and the cost of which would seemingly be borne by the public itself. The Court therefore denies the motion for preliminary injunction. In addition, the Court orders the plaintiffs to file a particularized complaint, in which they must offer factual allegations to support their threadbare legal claims. The Court will take the defendants' motions to dismiss under advisement, pending review of the plaintiffs' revised complaint.

## I. STANDARD OF REVIEW

As this Court has previously explained, "The requirements for preliminary injunctive relief are well established." *Perry v. Judd*, 840 F. Supp. 2d 945, 950 (E.D. Va. 2012) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds*, 130 S.Ct. 2371 (2010)).

> Such relief is appropriate when the plaintiffs establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiffs' favor; and (4) an injunction is in the public interest. As the Fourth Circuit explained in *Real Truth About Obama, Winter*

---

[2] Insofar as the plaintiffs' requested relief is for the date of the November 6, 2012 local elections to be pushed back, their claims must be dismissed. The window of opportunity for such delay has already passed, due primarily to the plaintiffs' unjustified initiation of the action less than two months before Election Day. Their sluggishness prevents the "injury," however defined, from being redressed through a change of date. As a result, they lack standing to sue for a change of date. *See* Section II, *infra*. Even more fundamentally, the plaintiffs have also failed to articulate any personal injury, another critical element of standing.

requires that the plaintiffs make a clear showing that they will likely succeed on the merits at trial."

*Id.* (citations omitted).

## II. DISCUSSION

The plaintiffs argue that their motion is justified by alleged violations of the U.S. Constitution, the Voting Rights Act of 1965, 42 U.S.C. §§ 1973–1973aa-6, and Va. Code Title 24.2, which governs all aspects of elections within the Commonwealth of Virginia. The plaintiffs' pleadings are long on innuendo but short on both law and fact. They come nowhere near the required showing for preliminary injunctive relief.

For one, the plaintiffs fail to explain how they have been injured, instead making claims "on behalf of all local candidates (qualified and unqualified by the Richmond registrar) . . . and all the citizens of Richmond. . . ." (*Id.* at 2.) For this reason, as their claims are currently stated, the plaintiffs do not appear to have standing even to seek such an investigation. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (requiring that the party bringing suit to have individually suffered some actual or threatened injury that can fairly be traced to the challenged action of defendant and that the injury is likely to be redressed by a favorable decision); *see also Allen v. Wright*, 468 U.S. 737, 751 (1984); *Valley Forge Christian College v. Americans United*, 454 U.S. 464, 472 (1982). In their respective capacities as "Candidate for Mayor" and "Voter and Petition Circulator," Harvey and dorsey never say what the defendants have done or will do to them personally. The motion for preliminary injunction must be denied, for there is no proof of harm to the plaintiffs, let alone "irreparable harm."

The plaintiffs' motion is basically a laundry list of unsupported attacks on the performance of the Virginia State Board of Elections and the City of Richmond General

Registrar, along with a complaint about supposed shortcomings in the Virginia Election and Registration Information System (VERIS).[3] Among other things, the plaintiffs assert:

> [A]ll candidates were guaranteed a post deadline review in prior years and that by giving reviews to certain candidates and not to others is a violation of their rights for equal protection under the law. . . .
>
> [M]any errors have been found including errors that may affect the disqualification of other previously qualified candidates such as Dwight C. Jones, candidate for mayor, who provided many signatures that appear to be forgeries. . . .
>
> Parker Agelasto, candidate for 5th District city council, listed signatures of unregistered voters and these signatures were counted as unregistered and after the deadline on June 12, 2012, the registrar acknowledged the errors as deficiencies, and therefore, Mr. Agelasto's signatures should have totaled less than the 125 required and his name should have been deleted from the ballot. . . .
>
> [T]he manual and Veris systems used by the registrar and the State Board of Elections have been proven to be so flawed that the whole process requires revamping to provide equal treatment for all candidates. . . .
>
> [T]he registrar, Jane Kirk Showalter, has shown favoritism to E. Martin Jewell over S. Lee Shewmake in the qualifying process regarding payment of penalties for late filing of expenditure reports and that late filers who have not paid penalties cannot have his/her name placed on the ballot. . . .

(Dk. No. 2 at 3–4.)

They allege no specific facts to support these conclusions.

In their 152-page memorandum in opposition to the defendants' motions to dismiss,[4] the plaintiffs add a number of other uncorroborated allegations, such as:

---

[3] The defendants of the Virginia State Board of Elections—Palmer, Bowers, and Judd—call VERIS "the backbone of the Virginia voter registration system" and claim it "is used by local registrars and the State Board for a wide range of functions, including determining whether a voter is registered, where he or she is registered, and for validation of candidate petitions." (Dk. No. 9 at 2.)

[4] This pleading is actually styled as a "MEMORANDUM IN SUPPORT OF L. SHIRLEY HARVEY AND chris dorsey, Plaintiffs to continue the initial hearing for the above case." The Court has not scheduled any hearing, so there is nothing for which a continuance may be granted. The plaintiffs' motion for continuance is thus denied.

If cheating or gross mistakes are allowed for only some of the candidates, then the equal rights of all other candidates have been denied. The United States District Court is specifically being petitioned due to the Voting Rights Act violation regarding no review of petitions added in the Code of Virginia without preclearance by the United States Justice Department. The defendants knew there were numerous problems with the VERIS system that could cause fraud and gross error to abound.

. . .

[W]hen a process has been deemed to be less than accurate and fair, every candidate should be treated equally. The process for qualification is too subjective on the part of the registrar who due to a lack of oversight by the Richmond Electoral Board and the State Board of Elections can make whatever decision he/she likes.

. . .

The State Board of Elections did not perform its due diligence in providing pre-clearance from the Voting Rights Section of the Justice Department for the change which required that there is no review after the qualifying date. If these duties had been performed, the registrar could not have closed the qualifying process without a review. Their lack of performance affected all candidates and all citizens of Richmond.

. . .

The State Board of Elections Defendants abdicated all their responsibilities as employees of the State of Virginia. They did not perform to the basic core of their responsibilities and not having done so has provided for voters an improper listed of candidates, some of which did not properly qualify. Because the defendants did not perform their oversight responsibilities, the citizens have a questionable ballot.

. . .

[T]he State Board did not act according to the following provision of the Code of Virginia to request investigative help when it was clear that election laws had been violated. Again, they missed an opportunity to assure the citizens of Richmond that the ballot was fair.

. . .

The Virginia Code gives the candidates the right to freely exercise their freedoms to participate in government leadership. The State Board of Elections, the Attorney General's Office, the Richmond Electoral Board and the registrar denied the right to review petitions when there was no authority given by the Justice Department to do so. . . . Since 2011the provision for denial of review after the deadline has been in place, Yet the State Board of Elections nor anyone else in authority has had this addition to the laws governing elections pre-cleared. The citizens of Richmond and Virginia are not being

properly served because a law that cannot be a law until the Justice Department has given its permission is actively being used against the citizens. This is a conspiracy.

. . .

The State Board of Elections allowed no review of qualification to be included in the state law regarding elections. This was done without pre-clearce [*sic*] from the voting rights sections of the Justice Department. Therefore, the Virginia Code concerning qualification for election is imperfect and imperfect for every candidate and citizen of the city of Richmond.

. . .

As a result of checking the documents regarding petition lists, it was found that the VERIS system is not a good indicator of accuracy and that the information provided by the registrar's office is subjective at best and could lead to fraud and conspiracy by the officials and employees who work for the State of Virginia.

. . .

[T]here is no way to check the registrar's accuracy. The candidates nor the public has access to the VERIS system. . . . The public cannot know whether the registrar, Jane Kirk Showalter, was bribed, if she chose to make decisions based on which candidate she liked, if she wanted to offer her power for favoritism, or if she was performing her work correctly and just make mistakes. However, mistakes were made and voters and candidates were harmed.

(Dk. No. 14 at 1–8.)

The plaintiffs simply present no proof that there was either "cheating or gross mistakes" in candidate petitions, that the process for ballot qualification "has been deemed to be less than accurate and fair," that there was any change in voting procedures which required Department of Justice "preclearance" under Section 5 of the Voting Rights Act, that the State Board of Elections has "abdicated" responsibility or failed to follow any state election laws, that VERIS suffers from any specific defects, or that the registrar has shown any favoritism to any municipal office candidate. Without such proof, this Court cannot issue an injunction of any kind.

In addition to the foregoing accusations, the plaintiffs claim to have demonstrated the flaws in VERIS through their own investigative efforts. (*See id.* at 7–8.) Their "findings" are

6

labeled as "Exhibit I L. Shirley Harvey Documentation and Evidence." This exhibit is really just sixty-plus pages of email correspondence, mostly between Harvey and Showalter, in the months leading up to Harvey's lawsuit. What these emails show, more than anything else, is a consistent effort on the part of local and state officials to address Harvey's needs and concerns and Harvey's uncooperative and sometimes strange behavior in response.[5] They certainly do not reveal any problems with VERIS constituting violations of the Equal Protection Clause, the Voting Rights Act, or Virginia Code provisions governing local elections.

As for dorsey, the pleadings do not at all explain how he has been aggrieved. Whereas with Harvey, one can at least gather that she unsuccessfully attempted to get on the election ballot for Mayor of Richmond,[6] it remains unclear how dorsey is related to the present action, except as a concerned citizen. The plaintiffs' memorandum in opposition to the motions to dismiss contains an exhibit—"Exhibit II chris dorsey Documentation and Evidence"—with four pages of supposed "Violations of the GREBook." (*See* Dk. No. 14 at 79–83.) The plaintiffs do not explain what the "GREBook" is, how it relates to the Virginia Code, or how it supports dorsey's claims.

---

[5] At one point, even Harvey thought it necessary to apologize for her "harsh words" to Showalter. (*See* Dk. No. 14 at 17.) Notwithstanding Harvey's conduct, Showalter continued to offer guidance on petition requirements (*see id.* at 26, 27), repeatedly having to explain that she had already provided the information that Harvey sought. (*See id.* at 19, 23, 24.) But even these efforts could not spare Showalter from Harvey's angry responses. In one email, Harvey accused Showalter of engaging in "a total fabrication of the truth." (*Id.* at 26.) In another, Harvey oddly wrote, "I never said anything about the law. I was talking about you and how you run the voter registration office. What did you do to assure that fairness was at play? I am talking about all petition signatures, not just mine. How do you know for sure that they would have been entered into the system? What's the problem? You can't sleep. Go to sleep, if you can, and we can email some more tomorrow. Good morning, Kirk. I am working on a very interesting project." (*Id.* at 30.)

[6] Notably, the plaintiffs never present this fact as the basis for any of their claims. Instead, all their claims are couched in terms of harm to the general public, which, again, is not sufficient for standing to sue.

In short, the motion for preliminary injunction must be denied. The plaintiffs have not met any of the four prongs of the test for preliminary injunctive relief. Without any showing of harm, they cannot establish a likelihood of success on the merits, that the balance of equities tips in their favor, or that an injunction would serve the public interest. Indeed, the public would apparently foot the bill for this grand investigation, with no clear benefit to be gained.

The Court will, furthermore, order the plaintiffs to file a particularized complaint, for the current complaint—which is the very same document as their motion for preliminary injunction—is deficient according to the pleading requirements of the Federal Rules of Civil Procedure.

The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and oral argument will not aid the decisional process.

It is so ORDERED.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record and the plaintiffs.

/s/
John A. Gibney, Jr.
United States District Judge

Date: November 7, 2012
Richmond, VA